**In re the MARRIAGE OF Paul ROSS and Lorette K. Ross**

**Upon the Petition of Paul Ross, Appellant,**

**And Concerning Lorette K. Ross, n/k/a Lorette K. Collins, Appellee.**

No. 90–874.

Court of Appeals of Iowa.

April 23, 1991.

Thomas J. Reilly, Des Moines, for appellant.

Barry L. Griffith of Johnston, Hicks, Guiter and Griffith, Knoxville, for appellee.

Considered by OXBERGER, C.J., and HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

Paul and Lorette Ross's marriage was dissolved by an Arkansas decree in 1986. Physical custody of the parties' two young children was awarded to Paul. The children resided with Paul in Arkansas from 1986 until December 24, 1988. From December 24, 1988 to June 17, 1989, the children resided with Lorette in Iowa. They then returned to Arkansas.

While the children were visiting Lorette in Iowa during the summer of 1989, she obtained a temporary injunction from the Iowa district court preventing Paul from removing the children. She then filed for modification of the Arkansas decree in Iowa district court. When Paul consented to personal and subject matter jurisdiction, the district court ordered the writ quashed, and Paul was given temporary custody of the children. In a subsequent proceeding, the trial court modified the Arkansas divorce decree by granting custody to Lorette.

Because we find Iowa did not have jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA), Iowa Code chapter 598A, we reverse the trial court and dismiss the Iowa modification petition.

## I. *The Facts*

Paul and Lorette Ross were married in 1979. Two children were born of the marriage: Derek, born November 12, 1980; and Renee, born February 16, 1982. In 1984 the Rosses moved from Iowa to Arkansas. In August 1986 Paul Ross filed for divorce in Washington County, Arkansas. On October 6, 1986, a default decree was entered awarding custody of the children to Paul.

Paul was remarried in 1987. Lorette also remarried in 1987. In August 1988 Lorette moved back to Iowa. She resided with her parents while her husband was employed as an over-the-road truck driver.

Due to marital difficulties with his present wife, on December 24, 1988, Paul brought the children to stay with Lorette in Iowa. Paul returned to Arkansas. The parties dispute Paul's intentions when he left the children in Iowa. Paul continued to send $100 a month child support. He paid their school lunch tickets and wrote them. They visited Paul in Arkansas for a week over spring break.

The children resided with Lorette at their grandparents' home until sometime in May 1989. In March Lorette's present husband, Max Hall, quit work as an over-the-road trucker. He and Lorette bought a home near Knoxville, Iowa, and moved there with the children.

On June 17, 1989, the children returned to Arkansas. On August 6, 1989, the children returned to Iowa for a two-week visit. On August 19, 1989, when Paul arrived in Iowa to pick up the children, he was served with a temporary writ of injunction restraining him from removing the children. He was also served notice of Lorette's petition to modify the decree to change custody. The petition had been filed August 18, 1989.

On August 25, 1989, a hearing was held in Iowa. The parties consented to personal and subject matter jurisdiction. They agreed to quash the writ. They also agreed to allow the children to reside with Paul during the pendency of this action.

In October 1989 Paul filed an application for child support.

Following a trial, the district court modified the decree by awarding Lorette custody of the children and ordering Paul to pay child support.

Paul appeals. He contends the Iowa courts do not have subject matter jurisdiction of this case under the Uniform Child Custody Jurisdiction Act, Iowa Code chapter 598A. He points out Arkansas had not declined to assume jurisdiction as required under section 598A.14. Paul acknowledges Arkansas was not the "home state" of the children under section 598A.3(1)(a). However, he claims Arkansas would have "significant connection" jurisdiction under section 598A.3(1)(b). Therefore, according to Paul, the Iowa courts lack subject matter jurisdiction and should dismiss this matter and return custody of the children to Paul.

Alternatively, Paul argues Lorette failed to show a material and substantial change of circumstances justifying a change of custody. If he is awarded custody, Paul requests child support. He also requests an award of attorney fees pursuant to Iowa Code sections 598.36 and 598A.8(3).

## II. *Jurisdiction*

The starting point of our inquiry is whether Iowa has subject matter jurisdiction. The jurisdictional issue in this case is governed by the Uniform Child Custody Jurisdiction Act, Iowa Code ch. 598A. This act is recognized both in Iowa and Arkansas. *See* Ark.Stat.Ann. §§ 9–13–201 to 9–13–227 (1991).

We conclude from reading of the leading Iowa cases, a two-track analysis must be made. First, the court must determine if the state which issued the original custody decree (Arkansas) still has jurisdiction. Second, the court must determine if the state in which the modification petition is filed has jurisdiction. Finally, if both have jurisdiction, the court must determine which is the proper state to assume jurisdiction under section 598A.3.

The Iowa Supreme Court has already spoken on this issue. We quote from the leading Iowa cases:

Jurisdiction of the subject matter is the power to hear and determine cases of the general class to which the proceedings belong. When a court acts without legal authority to do so, it lacks jurisdiction of the subject matter. The court's jurisdiction of the subject matter however may be raised at any time and is not waived even by consent. We will determine subject matter jurisdiction even though not raised in the appellate briefs of either party. Also, we will examine the grounds for jurisdiction on our own motion before proceeding further. If we determine subject matter jurisdiction is absent, an order dismissing the petition is the only appropriate disposition. We therefore must determine whether the district court of Iowa lacked subject matter jurisdiction on any grounds.

*Pierce v. Pierce*, 287 N.W.2d 879, 881–82 (Iowa 1980) (citations omitted; quoted with approval in *St. Clair v. Faulkner*, 305 N.W.2d 441, 445 (Iowa 1981)).

A. *Modification Jurisdiction.*

*Initial* jurisdiction is determined by the guidelines of [section 598A.3], which point to the state with the closest connections to the child and to information about his present and future well-being. *Modification* jurisdiction is perhaps best viewed as an extension of the recognition and enforcement provisions of the Uniform Child Custody Jurisdiction Act. California is not effectively enforcing the New York decree if it modifies the decree as soon as the child has spent six months within its borders.

*In re Marriage of Leyda*, 398 N.W.2d 815, 819 (Iowa 1987) (emphasis in original; quoting the leading case of *Kumar v. Superior Court*, 32 Cal.3d 689, 652 P.2d 1003, 186 Cal.Rptr. 772 (1982)).

When dealing with a *modification* of a child custody decree of another state, the court must first consider the provisions of section 598A.14. That section in pertinent part provides:

If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court

which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter, or has declined to assume jurisdiction to modify the decree, and the court of this state has jurisdiction.

Two requirements under section 598A.14 *must* be met before an Iowa district court can modify a custody decree from another state. First, the court that rendered the decree cannot now have jurisdiction under jurisdictional prerequisites substantially in accordance with chapter 598A or the court that rendered the decree has declined to assume jurisdiction to modify the decree. Second, the district court of Iowa must have jurisdiction. *Pierce*, 287 N.W.2d at 882.

### B. Continuing Jurisdiction of Original Forum.

We now must examine whether Arkansas retains continuing jurisdiction over its original decree on the date the modification petition was filed, August 18, 1989. The record does not show the Arkansas court at any time declined to assume jurisdiction to modify its most recent custody decree. *See Pierce*, 287 N.W.2d at 882.

We must determine whether the original Arkansas decretal court, which rendered the decree to be modified, does not *now* have jurisdiction under jurisdictional prerequisites substantially in accordance with chapter 598A. *Id.;* Iowa Code § 598A.14. The term "now" as used in section 598A.14 refers to the time of the filing of the petition requesting modification. *Pierce*, 287 N.W.2d at 882. In the case before us that date is August 18, 1989.

Courts rendering a custody decree normally retain continuing jurisdiction to modify the decree under local law. In order to achieve greater stability of custody arrangements and avoid forum shopping, the Iowa courts defer to the continuing jurisdiction of the court of another state so long as that state has jurisdiction under the standards of chapter 598A. *Id.* In other words, all petitions for modification should be filed in the prior state if that state has

sufficient contact with the case to substantially satisfy section 598A.3. Uniform Child Custody Jurisdiction Act § 14 note.

We first consider if the Arkansas court has jurisdiction on August 18, 1989, under section 598A.3(1)(a) as the "home state." Section 598A.2(5) provides:

*"Home state"* means the state in which the child, immediately preceding the time involved, lived with the child's parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

The children have not resided in either Iowa or Arkansas for at least six consecutive months *immediately* preceding this action. Therefore, neither Arkansas or Iowa can be considered the "home state" of the children on August 18, 1989. However, "home state" status is not the sole criteria for continuing jurisdiction.

Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.

*Leyda*, 398 N.W.2d at 819.

In *Leyda*, the child resided with her mother in Florida for over a year. Thus, Florida could be the "home state." *Id.* at 818. However, Iowa was the original decretal state. The father remained a resident of Iowa. The Iowa Supreme Court held Iowa retained continuing jurisdiction to modify the custody decree and Florida lacked jurisdiction over the case. *Id.* at 819–20.

Arkansas is the original decretal state. It has not declined jurisdiction. Paul continues to reside there. The children have spent most of their lives there. Their schools and friends are there. Substantial evidence exists in Arkansas concerning the children's present and future well-being. It is clear Arkansas retains continuing jurisdiction over the dissolution decree awarding custody.

### C. Jurisdiction of State where Modification Filed.

■ We must now determine if Iowa has modification jurisdiction under one of the alternate jurisdictional provisions of section 598A.3. In *St. Clair v. Faulkner*, the Iowa Supreme Court considered a case analogous to this one.

In *St. Clair*, the father had custody of the parties' child. *Id.* at 442. He resided in a state outside Iowa. He was experiencing marital difficulties with his present wife, similar to those Paul was experiencing here. He also brought the child to stay with the mother, his former wife, who resided in Iowa. When he returned to Iowa to reclaim the child, the mother brought a custody modification action in Iowa. *Id.* Her grounds for the modification were basically the same as those in the present case. *Id.* at 442–43.

In a detailed opinion, the supreme court engaged in a step-by-step analysis of Iowa's jurisdiction under the UCCJA, Iowa Code § 598A.3. *Id.* 445–48; *see also S.R., by M.J.R. v. M.R.*, 401 N.W.2d 221, 224–25 (Iowa App.1986). The court held the father had not abandoned the child under section 598A.3(1)(c). *Id.* at 447. The court rendered a definition of "abandon":

"To desert, surrender, forsake or cede. To relinquish or give up with intent of never again resuming one's right or interest. To give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert. It includes the intention, and also the external act by which it is carried into effect."

*Id.* (quoting *Black's Law Dictionary* 9 (rev. 4th ed. 1968) (citations omitted)).

In the present case Paul temporarily placed the children with Lorette while he attempted to work out his marital problem. Regardless of his stated intentions regarding custody, he did not abandon his children as defined by the Iowa Supreme Court. We determine Iowa did not have jurisdiction under any of the provisions of section 598A.3.

### D. Federal Parental Kidnapping Act.

■ Federal law also must be considered in determining which states have jurisdiction. The Federal Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A (1983) indicates a congressional intent the act be applied in all interstate custody disputes.

The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section [that that court has jurisdiction under its own law] continues to be met and such State remains the residence of the child *or of any contestant.*

28 U.S.C. § 1738A(d) (emphasis added).

State courts considering the question have held the federal legislation preempts state law in determining when jurisdiction may be exercised in interstate custody matters. *Leyda*, 398 N.W.2d at 819–20. We determine the federal law supports our holding Arkansas, and not Iowa, has jurisdiction over the present case.

### III. Analysis

■ The trial court in this case apparently never considered the jurisdictional issues under the UCCJA as codified in Iowa Code chapter 598A. *See S.R., by M.J.R.*, 401 N.W.2d at 223–26. These jurisdictional requirements are mandatory, not discretionary. If the court lacks subject matter jurisdiction, it is *without authority* to hear the case and must dismiss the petition. *See Pierce*, 287 N.W.2d at 881–82.

Paul and the children have resided together in Arkansas since 1984. Lorette resided in that state until August of 1988. The Arkansas dissolution decree awarding

custody of the children to Paul was rendered in 1986. Arkansas has never declined to exercise jurisdiction over this matter.

The children came to Iowa to temporarily reside with their mother while Paul attempted to work out marital difficulties with his current wife. *See St. Clair*, 305 N.W.2d 441, 447 (Iowa 1981). The children stayed in Iowa *less* than six months, precluding Iowa from being their home state. *See* Iowa Code §§ 598A.2(5) and 598A.3(1)(a).

Paul remains a resident of Arkansas, thus maintaining preference for Arkansas jurisdiction over modification of custody. *See Leyda*, 398 N.W.2d at 819. The most significant contacts in regard to the children also remain in Arkansas. That is where they spent most of the past six or seven years. *See St. Clair*, 305 N.W.2d at 448. They have grown up there and gone to school there.

Additionally, up until the time of this action, the children had very little chance to form any enduring contacts in Iowa. They left Iowa when they were still quite young. They returned to Iowa and lived with their mother at their maternal grandparents' home for less than five months, from December 24, 1988, until sometime in May 1989. They then moved to their mother and stepfather's home near Knoxville, Iowa, where they resided until June 17, 1989. At that time they returned with their father to Arkansas, and they remained there until they visited their mother in Iowa in August 1989. Their temporary placement remained with their father in Arkansas until May 1990. At that time the Iowa trial court modified the Arkansas decree, changing custody to the mother in Iowa.

In its ruling modifying the Arkansas divorce decree and changing custody, the Iowa trial court found Paul intended to transfer permanent physical custody of the children to their mother when he delivered them to her in December 1988. However, to assume jurisdiction to make this adjudication, the Iowa trial court must first find

Paul *abandoned* his children as defined in *St. Clair*, 305 N.W.2d at 447.

Paul continued to send $100 a month child support. He paid their school lunch tickets and wrote them. They visited Paul in Arkansas for a week over spring break. This is not the "abandonment" required to give Iowa jurisdiction under section 598A.3(1)(c). *See id.*

Under the UCCJA as interpreted by our supreme court, Iowa lacked jurisdiction over this case from its inception. The trial court should not have reached the merits of this case, but rather should have dismissed the petition for modification.

This is not a case where the custodial parent has been derelict in his duty to adequately parent his children. The trial court stated in its opinion both parents were good and loving parents. We agree both parents behaved appropriately in the presence of the children. If custody is to be modified, it should be done in the state with the most "significant connection ..., and there is available ... substantial evidence concerning the child's present or future care, protection, training, and personal relationships ..." Iowa Code § 598A.3(1)(b).

Arkansas issued the original decree awarding custody. Deference is given its continuing jurisdiction over custody modification issues as long as it meets the jurisdictional requirements of section 598A or unless it declines to assume jurisdiction. Iowa Code § 598A.14; *Pierce*, 287 N.W.2d at 882. Arkansas has not declined to assume jurisdiction. Iowa Code § 598A.14. Substantial evidence remains in that state concerning the children. *Id.* § 598A.3(1)(b). One of the contestants, the custodial parent, remains a resident of Arkansas. *See Leyda*, 398 N.W.2d at 819.

This case involves a custody dispute between parents residing in different states. In cases such as this, the Iowa trial court should communicate with its sister court or courts of the other states involved. The example of the trial court in *S.R., by M.J.R.*, 401 N.W.2d at 223, provides valuable guidance on a proper method of communication. We do not imply this is the

only way to so communicate. *See* Iowa Code §§ 598A.19 to 598A.22. The trial court should be creative and thorough in its application of the UCCJA. Cooperation and communication are essential both for correct application of the law and for the well-being of the children involved. The UCCJA was designed to facilitate that cooperation. *See Pierce*, 287 N.W.2d at 884. Iowa's courts are required to implement the statute accordingly.

### IV. *Attorney Fees*

■ Because we lack subject matter jurisdiction, we cannot consider the claims concerning substantial change of circumstances or child support. However, we may award attorney fees.

> In appropriate cases a court dismissing a petition under this section may charge the petitioner with necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses.

Iowa Code § 598A.8(3).

We accordingly award Paul $1,000 attorney fees.

### V. *Conclusion*

We determine Iowa lacks subject matter jurisdiction to hear the case. The district court should have dismissed the Iowa modification action. We reverse the district court and dismiss the modification petition. With dismissal of the action, the custody order also falls. If Lorette desires to commence an action in Arkansas, that is her prerogative. Unless within sixty days she commences such an action and obtains an Arkansas order for temporary custody under its law, she is required to surrender the children to Paul. *See St. Clair*, 305 N.W.2d at 448.

The holding of the district court is reversed. Lorette's petition is dismissed at her costs. Paul is awarded $1,000 attorney fees.

Costs of this appeal are taxed to Lorette.

REVERSED; PETITION DISMISSED.

OXBERGER, C.J., concurs.

SACKETT, J., dissents.

SACKETT, Judge (dissenting).

I would affirm. I would find the trial court had personal and subject matter jurisdiction and its decision was correct.

Prior to trial on September 9, 1989, Judge William Jay entered an order that provided in part:

> The parties further stipulated and agreed to the jurisdiction of this court to hear and determine the petition for modification filed August 18, 1989 by the respondent in this court. That consent to jurisdiction is to both personal jurisdiction of the court and consent to the jurisdiction of the subject matter to be determined by this court.

The trial court then ordered:

> That this Court shall have jurisdiction to hear and determine the petition for modification filed August 18, 1989, and this jurisdiction is to both personal jurisdiction and jurisdiction of the subject matter.

The question of jurisdiction raised its head only after Paul was unsuccessful in the modification. I would find the August 18, stipulation and order resolved any issue of subject matter jurisdiction.

Even if it did not, I would find Iowa has subject matter jurisdiction under Iowa Code section 598A.3 which provides in relevant part:

> It is in the best interest of the child that a court of this state assume jurisdiction because the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

The parents have agreed to Iowa as a forum to hear the modification matter. Trial has been held with both parents present and represented. I see no valid reason why we should decline jurisdiction for possible relitigation in another forum.